**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Martha E. M. Kopacz*

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTHA E. M. KOPACZ,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THE NCHERM GROUP, LLC *individually and d/b/a* TNG, *and* TNG CONSULTING; *and* BRETT SOKOLOW,<br><br>　　　　　　Defendants. | Civil Action No._____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

1. Plaintiff, MARTHA E. M. KOPACZ, by her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

2. This case involves a) Breach of Contract for Defendants' failure to offer and pay Plaintiff severance pay as provided for in her employment agreement; and b) Defendants wrongful termination of Plaintiff in retaliation for her good faith reports of Defendants' violations of Federal and State Laws as well as ethical violations in violation of the Pennsylvania Whistleblower Law, 43 Pa.C.S. §§ 1421-1428 ("PWL").

1

3. Plaintiff seeks actual damages, compensatory damages, punitive damages, back pay, front pay, attorneys' fees, litigation costs, pre- and post-judgment interest, and an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the PWL.

## PARTIES

4. Plaintiff Martha E. M. Kopacz is an adult individual and a resident of the State of Massachusetts. Ms. Kopacz was Defendant's "employee" as defined under the PWL.

5. The NCHERM GROUP, LLC, individually and d/b/a TNG, and TNG CONSULTING, is a domestic Limited Liability Company duly existing under the laws of the Commonwealth of Pennsylvania.

6. In its marketing campaign on the Nations Sexual Violence Resource Center, Defendants state that, "The NCHERM Group is the umbrella for eight linked organizations which serve to advance holistic, proactive prevention and risk management within K-12 schools and on college and university campuses. The NCHERM Group is both a law and consulting practice that has served the education field for more than 15 years. As a law firm, The NCHERM Group represents 35 colleges and universities as outside counsel, making it one of the largest higher education-specific law practices in the country. As a consulting group, The NCHERM Group's twenty-four consultants have provided services to more than 3,000 clients, giving it unparalleled reach and impact on the field. The NCHERM Way has become the risk management touchstone for schools, colleges and universities across the country."

7. At all times material, The NCHERM GROUP, LLC does business as "TNG" and "TNG CONSULTING."

8. According to its website, "For over 20 years TNG has provided proven risk management solutions through our expert partners and consultants who are the foremost practitioners in the field. We are pleased to serve as the risk management touchstone for institutions of higher education, K-12 schools, and workplaces."

9. Defendant The NCHERM GROUP, LLC's principal place of business is located at 475 Allendale Road Suite 200 King of Prussia PA 19406.

10. Around January of 2020, Defendants hired Plaintiff as Chief Executive Officer of Defendant The NCHERM GROUP, LLC.

11. Defendants receive public funds and are thus subject to the Pennsylvania Whistleblower Law.[1] "The Whistleblower Law applies only to employees of a "public body." Section 2 of the Whistleblower Law, 43 P.S. § 1422. However, the Whistleblower Law defines "public body" to include, in addition to state and local government, "[a]ny other body ...

---

[1] "The plain meaning of the language of the statute makes it clear that it was intended to apply to all agencies that receive public monies under the administration of the Commonwealth. We do not find that legislatively appropriated funds are the only monies that will create "public body" status under the Whistleblower Law. The statutory language differentiates between appropriated and "pass-through" funds and extends the law to cover both types: "[a]ny other body which is ... funded in any amount by *or through* Commonwealth...." 43 P.S. § 1422 (emphasis added). The Law clearly indicates that it is intended to be applied to bodies that receive not only money appropriated by the Commonwealth, but also public money that passes through the Commonwealth. We find, therefore, that a recipient of Medicaid funding is a "public body" for purposes of the Whistleblower Law. Because appellant alleges that she was discharged for making good-faith reports of wrongdoing and waste, she states *577 a valid cause of action, and her complaint on this count was erroneously dismissed. Appellant's claim for "civil conspiracy" is related to the Whistleblower Law violations and was thus properly dismissed as being repetitive of the former cause of action. Turning next to appellant's claim for wrongful discharge, we find again that she has stated a valid cause of action. While it is true that Pennsylvania embraces the "at will" employment doctrine, our Supreme Court has recognized an exception where an employee is discharged in violation of public policy. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). An *en banc* panel of this Court subsequently determined that the public policy exception may be applied under narrowly limited circumstances where (1) an employer requires an employee to commit a crime, (2) an employer prevents an employee from complying with a statutory duty, or (3) a statute prohibits discharge. *Shick v. Shirey*, 456 Pa.Super. 668, 691 A.2d 511, 513 (1997)." Denton v Silver Stream Nursing and Rehabilitation Ctr., 739 A2d 571, 576-77 [Pa Super Ct 1999]. see also, "The Pennsylvania Superior Court has twice cited *Denton* favorably for its interpretation of the Pennsylvania Whistleblower Statute, including after the statute was amended in 2014. *See Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 475 n.8 (Pa. Super. Ct. 2017); *Harrison v.* 2018 WL 6520982, at *6 n.4. Because Pennsylvania's intermediate appellate court decisions are strong indicators of how the Pennsylvania Supreme Court would rule—and because *Denton* is both consistent with the plain language of the statute and has been favorably cited by later Pennsylvania decisions—the court will follow Denton. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010) (holding that courts interpreting state law should generally follow that state's intermediate appellate courts unless strong evidence suggests they should not); *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 409-10 (3d Cir. 2016) (same)." Romer v MHM Health Professionals, 1:20-CV-1275, 2020 WL 6747418, at *4 [MD Pa Nov. 17, 2020]

which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." *Id.* Although the parties do not discuss this, TJU's status as a "public body" subject to the Whistleblower Law is apparently based on receipt of public funds. See *Riggio v. Burns,* 711 A.2d 497, 500 (Pa.Super.1998) (*en banc*) (receipt of government funds made hospital a "public body" under the Whistleblower Law)." Evans v Thomas Jefferson Univ., 81 A3d 1062, 1064 [Pa Commw Ct 2013]

12. Defendant Brett Sokolow is a citizen of the state of California.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs; and is between citizens of different States. Plaintiff is a citizen of the state of Massachusetts and Defendants are citizens of the state of Pennsylvania and California and there exists complete diversity of citizenship. The matter in controversy greatly exceeds the $75,000 statutory minimum for diversity of citizenship.

14. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this judicial district and Defendants are subject to personal jurisdiction here.

## FACTS

Whistleblower Violations

Illegal and Unethical Activity By Defendants

15. Defendants committed numerous acts of wrongdoing defined under the PWL as a "violation which is not of a merely technical or minimal nature of a Federal or State statute

4

or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."

16. Such violations include but are not limited to the following:

    - **"Ghost billing" Fraud.** When billing clients, Defendant BRETT SOKOLOW has a much higher rate (e.g. $700 per hour and up) for his own work compared to the work performed by other consultants (e.g. $250 to $350 per hour). Defendants had a practice of billing their clients for expert witness work under the guise that Defendant BRETT SOKOLOW was working on the case when, in actuality, other consultants were working on the cases. Defendants would bill the clients for the hours worked by the other consultants as if they had been incurred by Defendant BRETT SOKOLOW at his rate. Plaintiff objected to this fraud and even threatened to resign unless Defendants changed their fraudulent practice.

    - **Solicitation of Professional Employment In Violation of PRPC 7.3**. Pennsylvania Rules of Professional Conduct Rule 7.3 states as follows:

      "Solicitation of Clients(a) A lawyer shall not solicit in-person or by intermediary professional employment from a person with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted is a lawyer or has a family, close personal, or prior professional relationship with the lawyer. The term "solicit" includes contact in-person by telephone or by real-time electronic communication, but, subject to the requirements of Rule 7.1 and Rule 7.3(b), does not include written communications, which may include targeted, direct mail advertisements." In violation of Rule 7.3, employees of Defendants, on behalf of Defendants' lawyers, would

directly solicit attorneys on filed cases attempting to secure professional employment. Lawyer employees for Defendants had no family or prior professional relationship with these persons and a significant motive for the lawyer's doing so was the lawyer's pecuniary gain. Defendants even have a sales representative whose job is to directly solicit in violation of Rule 7.3. When Plaintiff complained to Defendants, Defendant BRETT SOKOLOW stated "Lawyers do this all the time, and no one will ever find out." Plaintiff fired this sales representative and ended this unethical practice.

- **Tax Fraud.** Defendant BRETT SOKOLOW received a $3 million dividend from Defendant The NCHERM GROUP, LLC. This was income to Defendant BRETT SOKOLOW. However, Defendant BRETT SOKOLOW improperly recorded the dividend as a loan from the company to him so as to avoid paying taxes on the $3 million distribution. Plaintiff reported this improper loan to the then CFO of Defendants as well as to Defendant BRETT SOKOLOW who refused to properly report and categorize the distribution. By improperly calling his income a "loan" Defendant BRETT SOKOLOW was forcing the company, for which Plaintiff was the CEO, to engage in tax fraud. Plaintiff would regularly bring this up to Defendant BRETT SOKOLOW who would not listen. Defendant BRETT SOKOLOW also wrongfully expensed hundreds of thousands of dollars for so called "improvements for the Berwyn house." This was a personal property owned by Defendant BRETT SOKOLOW (or some entity he controlled) that was falsely labeled as being a business expense. Plaintiff objected to Defendant BRETT SOKOLOW's use of company funds to pay for his personal expenses. Other personal expenses paid through the company about which Plaintiff objected included personal cars, including his wife's Bentley, country club

membership, hobbies, family phones, and other electronics. Plaintiff objected and managed to put an end to the numerous personal cars on the company accounts with the exception of one car for Defendant BRETT SOKOLOW. Plaintiff instructed Defendant's CFO to allocate Defendant BRETT SOKOLOW's personal expenses to the company's capital account in an attempt to put an end to the taking of fraudulent expenses. Despite Plaintiff's protests and attempts to end the fraudulent accounting, Around April 2022, Defendant BRETT SOKOLOW wrote a $40,000 check from the company towards a Lamborghini for his personal use. Again, Plaintiff told Defendant BRETT SOKOLOW not to do that and instructed the CFO to record the Lamborghini in his personal capital account. Defendant BRETT SOKOLOW also used the company's credit card to pay for his family's door dash meals, to which Plaintiff objected.

17. In or around September of 2022, Defendants did wrongfully retaliate against Plaintiff for reporting and objecting to the above instances of wrongdoing by terminating Plaintiff's employment with Defendant.

18. In or around September of 2022, Defendants did wrongfully retaliate against Plaintiff for reporting and objecting to the above instances of wrongdoing by terminating Plaintiff's contract with Defendant.

19. In or around September/October of 2022, Defendants did further retaliate against Plaintiff for reporting and objecting to the above instances of wrongdoing by concocting pretextual, false, and offensive "reasons" for her termination.

20. At all times herein mentioned, Defendants actions were wanton, reckless, intentional, and malicious and Plaintiff hereby demands punitive damages.

## CAUSES OF ACTION

### COUNT I
### PENNSYLVANIA WHISTLEBLOWER RETALIATION
### 43 P.S. § 1423

21. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

22. The PWL provides, " No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act." 43 P.S. § 1423(a).

23. "Wrongdoing includes not only violations of statutes or regulations that are of the type that the employer is charged to enforce, but violations of any federal or state statute or regulation." Golaschevsky v. Dep't of Envtl. Protection, 554 Pa. 157, 162 (1998) citing 43 P.S. § 1422.

24. In order to make out a retaliation case under the PWL, a plaintiff must plead: (1) wrongdoing and (2) a causal connection between the report of wrongdoing and adverse employment action. McAndrew v. Bucks County Bd. Of Com'rs, 982 F. Supp. 2d 491, 503 (E.D. Pa. 2013).

25. Plaintiff reasonably believed that Defendants' above actions were in violation of the law and or Rules or Regulations.

26. As a result of Defendant's violations of the PWL, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT II
## BREACH OF CONTRACT

27. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

28. On or about January 25, 2020 the parties entered into an Executive Employment Agreement.

29. This agreement stated in relevant part as follows in paragraph 5,

> Severance Payment. **If the Company terminates Executive's employment, Executive shall be eligible to receive a severance payment in the amount of Executive's Base Salary equal to 26 weeks of the agreed upon base salary amount** (the "*Severance Payment*"). The Company's obligation to make such continued salary payments will be subject to Executive's execution and delivery of a general release (and the expiration of the seven-day revocation period described therein) in the form attached hereto as Exhibit B. The Severance Payment will be paid in accordance with the Company's customary payroll practices immediately following the expiration of the revocation period in the general release, provided that Executive signs the release and does not revoke it. As noted in Section 3(a), if termination occurs within the first 12 months of the Executive's employment, the $25,000 signing bonus paid to the Executive will be deducted from the severance amount. (emphasis added)

30. Plaintiff's base salary amount was $510,000. Therefore, 26 weeks is equal to $255,000.

31. Defendants did terminate Plaintiff's employment.

32. The Agreement did not attach the above mentioned "Exhibit B" general release.

33. Defendants have failed to provide plaintiff with a general release for her to sign.

34. Defendants' right to a general release is waived for failure to comply with the condition precedent of providing the general release. "A party must also be estopped from asserting noncompliance with a condition precedent as a defense where that party's conduct made performance of the condition precedent impossible." <u>mPower Software Services, LLC v Am. Water Works Serv. Co., Inc.</u>, 2598 EDA 2018, 2019 WL 6195176, at *15 [Pa Super Ct Nov. 20, 2019]

35. In the event the court determines that Defendants are entitled to a general release to trigger the $255,000 payment, at the conclusion of this case to Plaintiff's satisfaction, Plaintiff will provide Defendants with a general release and therefore trigger Defendants' obligation to pay Plaintiff severance payment in the amount of $255,000.

**WHEREFORE** Plaintiff demands judgment against Defendant in an amount exceeding $150,000.00 to be determined at trial for all loses sustained by Plaintiff including but not limited to compensatory damages, lost wages, unpaid severance payment, reinstatement, emotional distress and suffering, punitive damages, costs and fees, pre- and post-judgment interest, as well as an adjudication and declaration that Defendants' conduct as set forth herein is in violation of the PWL.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by this complaint.

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
*Attorneys for Plaintiff, Martha E. M. Kopacz*

Dated: <u>October 21, 2022</u>